**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| WILLIAM JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NATUS MEDICAL INCORPORATED, ) <br> JOSHUA H. LEVINE, THOMAS J. ) <br> SULLIVAN, ILAN DASKAL, ERIC J. ) <br> GUERIN, LISA WIPPERMAN HEINE, ) <br> BRYANT M. MOORE, and ALICE D. ) <br> SCHROEDER, ) <br> ) <br> Defendants. ) <br> ) | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff William Johnson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Natus Medical Incorporated ("Natus" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Natus to ArchiMed SAS ("ArchiMed") (the "Proposed Transaction").

2. On April 17, 2022, Natus entered into an Agreement and Plan of Merger with Prince Parent Inc. ("Parent") and its wholly owned direct subsidiary Prince Mergerco Inc. ("Merger Sub") (the "Merger Agreement"). Parent and Merger Sub are affiliated with an investor

group comprised of funds managed by ArchiMed. Pursuant to the terms of the Merger Agreement, ArchiMed will acquire Natus for $33.50 in cash for each Natus common share.

3. On June 2, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Natus stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (a) the Company's financial projections; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Stifel, Nicolaus & Company, Incorporated ("Stifel"); and (c) potential conflicts of interest faced by Company insiders.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.[1]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

---

[1] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for June 29, 2022.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Natus common stock.

10. Defendant Natus is a Delaware corporation, with its principal executive offices located at 3150 Pleasant View Road, Middleton, Wisconsin 53562. Natus' shares trade on the Nasdaq Global Select Market under the ticker symbol "NTUS." Natus provides medical device solutions focused on the diagnosis and treatment of patients with central nervous and sensory system disorders worldwide. The Company provides product solutions for three end markets: Neuro, Newborn Care and Hearing & Balance. Natus' Neuro solutions include products and services that provide diagnostic, therapeutic and surgical solutions in neurodiagnostics, neurocritical care and neurosurgery

11. Defendant Joshua H. Levine has been Chairperson of the Board and a director of the Company at all relevant times.

12. Defendant Thomas J. Sullivan has been President, Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant Ilan Daskal is and has been a director of the Company at all relevant times.

14. Defendant Eric J. Guerin is and has been a director of the Company at all relevant times.

15. Defendant Lisa Wipperman Heine is and has been a director of the Company at all relevant times.

16. Defendant Bryant M. Moore is and has been a director of the Company at all relevant times.

17. Defendant Alice D. Schroeder is and has been a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On April 18, 2022, Natus announced in relevant part:

MIDDLETON, Wis., April 18, 2022 -- **Natus Medical Incorporated** (NASDAQ: NTUS), (the "Company" or "Natus"), a leading provider of medical device solutions to screen, diagnose, and treat disorders affecting the brain, neural pathways, and eight sensory nervous systems, announced today that it has entered into a definitive agreement to be acquired by an affiliate of ArchiMed ("ArchiMed"), a leading investment firm focused exclusively on the healthcare industry for approximately $1.2 billion. Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock, representing a 29% premium to the closing price of the Company's common stock on April 14, 2022.

"The sale of Natus to ArchiMed will provide our shareholders with immediate and substantial cash value, as well as a compelling premium, and the Board has unanimously agreed that this transaction is in the best interests of our shareholders," said Joshua H. Levine, Chairman of Natus.

"Our nearly 1,400 Natus Teammates remain committed to advance the standard of care and improve outcomes and quality of life for patients affected by disorders of the brain, neural pathways, and eight sensory nervous systems," said Thomas J. Sullivan, President & Chief Executive Officer of Natus Medical, Incorporated. "ArchiMed's mix of operational, medical, scientific and financial expertise will help us continue our mission to serve our customers while delivering immediate value to shareholders."

Under the terms of the agreement, Natus shareholders will receive $33.50 in cash for each share of Natus common stock they own. The transaction has fully committed equity financing from funds affiliated with ArchiMed and fully committed debt financing, and there are no financing conditions associated with the transaction.

Natus's Board of Directors has unanimously approved the merger agreement with ArchiMed and recommends that Natus's shareholders adopt the merger agreement. In connection with the transaction, the Company will prepare a proxy statement to be filed with the U.S. Securities and Exchange Commission ("SEC"). Following any review by the SEC, a definitive proxy statement will be mailed to shareholders of Natus. Natus expects to hold a Special Meeting of Shareholders to consider and vote on the proposed merger and the merger agreement as soon as practicable after the mailing of the proxy statement. The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including approval by Natus shareholders and receipt of regulatory approvals. Upon completion of the transaction, Natus will become a private company and Natus shares will no longer be listed on any public market.

Under the terms of the merger agreement, Natus may solicit proposals from third parties for a period of 30 days continuing through May 17, 2022, and in certain cases for a period of 35 days continuing through May 22, 2022. In addition, Natus may, at any time prior to receipt of shareholder approval, subject to the provisions of the merger agreement, respond to unsolicited proposals that constitute or would reasonably be expected to lead to a superior proposal. Natus will have the right to terminate the merger agreement with ArchiMed to enter into a superior proposal subject to the terms and conditions of such agreement, including payment of a customary termination fee. There can be no assurance that the solicitation process will result in a superior proposal or that any other transaction will be approved or completed. Natus does not intend to disclose developments with respect to this solicitation process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Preliminary Financial Results**
Revenue for the first quarter 2022 was $119.8 million, up 4.3% compared to $114.9 million in the first quarter 2021. During the first quarter of 2022, Natus incurred $3.4 million of extraordinary supply chain costs associated with acquiring semiconductors. The Company ended the quarter with $84 million in cash and no

debt, up from $75.6 million at the beginning of the quarter. The Company will release its full 2022 first quarter financial results after the close of the market on Thursday, May 5th. The previously announced conference call scheduled for Friday, May 6th at 8:00 a.m. Eastern Time (5:00 a.m. Pacific Time) will be cancelled.

**Financial Guidance**
Due to the announced transaction, the Company will no longer update financial guidance.

**Advisors**
In connection with the transaction, Stifel is serving as a financial advisor to Natus, and Davis Polk & Wardwell LLP is serving as legal advisor to Natus.

## The Materially Incomplete and Misleading Proxy Statement

20. On June 2, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Natus stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial projections; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Stifel; and (c) potential conflicts of interest faced by Company insiders.

### *Material Misrepresentations and/or Omissions Concerning Natus' Financial Projections*

21. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including all line items underlying projected: (a) EBITDA; (b) Unlevered Free Cash Flow (without proposed divested assets); and (c) Unlevered Free Cash Flow (plus proposed divested assets).

### *Material Misrepresentations and/or Omissions Concerning Stifel's Financial Analyses*

22. The Proxy Statement fails to disclose material information concerning Stifel's financial analyses.

23. With respect to Stifel's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (a) Natus' projected calendar year 2026 free cash flow; (b) the Company's terminal values; and (c) the inputs and assumptions underlying the discount rates ranging from 10% to 12%.

24. With respect to Stifel's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Stifel, respectively.

25. With respect to Stifel's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (a) the transactions analyzed; and (b) the individual premiums observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

26. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

27. Specifically, the Proxy Statement fails to disclose whether any of ArchiMed's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

28. In sum, the omission of the above-referenced information renders statements in the "Management Projections," "Opinion of Stifel Nicolaus & Company, Incorporated," "Background of the Merger" and "Interests of Natus' Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote,

Plaintiff and the other stockholders of Natus will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Natus**

29. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Natus is liable as the issuer of these statements.

31. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

32. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

33. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

34. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

35. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

36. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of Natus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Natus and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

41. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

42. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Natus, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 16, 2022　　　　　　　　　　**LONG LAW, LLC**

                By */s/ **Brian D. Long***
                  Brian D. Long (#4347)
                  3828 Kennett Pike, Suite 208
                  Wilmington, DE 19807
                  Telephone: (302) 729-9100
                  Email: BDLong@longlawde.com

                  *Attorneys for Plaintiff*